THOMAS, J., not voting.

---

CASSEL v. CITY OF NEW YORK. (No. 7191.)

(Supreme Court, Appellate Division, First Department. May 14, 1915.)

1. MUNICIPAL CORPORATIONS �köv404—TORTS—OBSTRUCTION OF ACCESS TO HOTEL—PROPRIETORSHIP—SUFFICIENCY OF EVIDENCE.

In an action by the administratrix of a hotel owner against a city for damages caused by obstructing the street in front of the hotel, evidence *held* sufficient to show that the deceased was lessee and proprietor of the premises.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 989–991, 993–999; Dec. Dig. ⊨⊐404.]

2. MUNICIPAL CORPORATIONS ⊨⊐404—TORTS—OBSTRUCTION OF ACCESS TO HOTEL—DELAY OF CITY IN SEWER WORK—SUFFICIENCY OF EVIDENCE.

In an action by the administratrix of a deceased hotel proprietor for damages to the business by obstructing the street in front of the hotel, evidence *held* sufficient to show that the city was responsible for part of the unnecessary delay in prosecuting the obstructing sewer work.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 989–991, 993–999; Dec. Dig. ⊨⊐404.]

3. LIMITATION OF ACTIONS ⊨⊐32—STATUTE APPLICABLE—ACTION FOR OBSTRUCTING STREET.

An action against defendant city, for damages to a hotel business by the unreasonably prolonged obstruction by sewer work of a street in front of the hotel, was not for damages to personal property, but to the easements of the lessee of the premises appurtenant to and annexed to the realty, entitling him to the use of the street for access to the premises, the damages being measured by the diminution in the usable value of the realty, and the charter of Greater New York (Laws 1901, c. 466) § 261, as amended by Laws of 1907, c. 677, providing that no action shall be maintained against the city on a claim accruing for damages for injuries to personal property, unless such action shall be commenced within one year, had no application.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 143–145; Dec. Dig. ⊨⊐32.]

⊨⊐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. MUNICIPAL CORPORATIONS ⬡⟐404—TORTS—OBSTRUCTION OF ACCESS TO HOTEL—SEWER WORK—DELAY OF CONTRACTORS—SUFFICIENCY OF EVIDENCE.

In an action by the administratrix of a hotel owner against the city for damages caused by obstructing the street in front of the hotel, evidence *held* sufficient to show that part of the delay was due to the failure of contractors to perform sewer work with due diligence.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 989–991, 993–999; Dec. Dig. ⬡⟐404.]

5. MUNICIPAL CORPORATIONS ⬡⟐751—TORTS—SEWER WORK—INDEPENDENT CONTRACTORS—STATUTE.

Where a city, as required by charter, submitted proposed sewer work to public competitive bidding, thereafter letting such work by contract, and, upon defaults by successive contractors, reletting the remaining work in the same manner, such contractors were not the agents of the city, but were independent contractors, for whose acts resulting in injury to persons or property the city was not liable, although it could not escape liability for failure in its own proper duty to maintain the streets in a reasonably safe condition, as by properly guarding obstructions and excavations, by delegating the duty to the contractors.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1580–1582; Dec. Dig. ⬡⟐751.]

6. MUNICIPAL CORPORATIONS ⬡⟐751—TORTS—JUDGMENT—VERDICT.

In an action by the administratrix of a deceased hotel proprietor for damages caused the property when access to the street on which it was abutted was cut off by prolonged sewer construction, where the jury did not find separately what part of the delay and damage was caused by the contractors, but returned special findings that both the city and independent contractors, for whose acts the city was not liable, were responsible for the delay, upon which judgment was entered for the plaintiff, no part of the recovery could be sustained.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1580–1582; Dec. Dig. ⬡⟐751.]

7. MUNICIPAL CORPORATIONS ⬡⟐394—PUBLIC IMPROVEMENTS—OBSTRUCTION OF STREET—EXTENT OF LIABILITY OF CITY.

Although a municipal corporation is not liable for failure to make a municipal improvement, or for consequential damages to the owners or occupants of property abutting on a street which it obstructs in making such an improvement under legislative authority, even if any unauthorized obstruction of a street is a public nuisance, and a private nuisance if special damage is caused thereby, and although such corporation is not liable for its officers' errors of judgment in determining the plan of a public improvement, or for their errors in determining in advance the period within which such work shall be performed, it is nevertheless such corporation's duty, in exercising its legislative authority to make improvements requiring the obstruction of streets, to use reasonable care and diligence, to see that the street shall not be unnecessarily obstructed, and that necessary obstructions shall not be continued beyond the time reasonably required for the improvement.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 938–945; Dec. Dig. ⬡⟐394.]

Ingraham, P. J., and McLaughlin, J., dissenting in part.

Appeal from Trial Term, New York County.

Action by Josephine Cassel, as administratrix, against the City of New York. Judgment for plaintiff, and defendant appeals therefrom, and from an order for an additional allowance and denying its motion for a new trial. Reversed, and new trial granted.

⬡⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-LIN, DOWLING, and HOTCHKISS, JJ.

John F. O'Brien, of New York City (Terence Farley, of New York City, on the brief), for appellant.

Chase Mellen, of New York City, for respondent.

LAUGHLIN, J.   The plaintiff's intestate, claiming to be the proprietor of a hotel and restaurant business conducted on premises at the southeasterly corner of Webster and Wendover avenues in the borough of the Bronx, New York, brought this action to recover damages caused by the obstruction of access to the premises through alleged unreasonable delay on the part of the city, its servants, agents, and contractors in the period of time employed in constructing a sewer, known as the storm relief tunnel sewer, from the Webster avenue sewer, in front of the premises, and his administratrix, who was duly substituted as plaintiff, has recovered under a charge by which the jury were permitted to hold the city liable for any unreasonable delay on its part, or on the part of its agents, servants, or contractors to whom it let the work.

[1] For a period of 12 years prior to the 6th day of March, 1901, the decedent had been engaged in the hotel business on Park avenue, and on that day he moved to the premises in question, which were two blocks westerly therefrom.   The appellant contends that it was not satisfactorily shown that the plaintiff's intestate conducted the business; but I think that the evidence fairly shows that he did.   It appears that he leased the premises from the Eichler Brewing Company, and in the four story building thereon conducted a restaurant, a hotel with 18 rooms for guests, and a bar, and also from 1904 a large banquet hall adjoining the property, but the liquor tax license was never issued in his name.   Counsel for the plaintiff on the trial withdrew any claim for damages on account of any injury to the liquor business, and the award of damages was confined to the hotel and restaurant business.   The claim that the decedent was not the proprietor is based on the facts that the bar, restaurant, and hotel were conducted together, that the liquor tax certificates were issued to his family, who, it is claimed, thereby became interested in the entire business, and that his wife took charge of the room receipts as her own.   I think the weight of the evidence supports the finding of the jury that the decedent was the lessee and proprietor.

[2] By virtue of the authority conferred by its charter, the city prepared plans and specifications for the construction of the sewer or tunnel in question, which was to be constructed from a point at or near Webster avenue at its intersection with Wendover avenue to the Harlem river at High Bridge.   Wendover avenue was about 100 feet in width, and ran nearly east and west.   Webster avenue ran nearly north and south, along the westerly side thereof, and between it and what is known as Claremont Park ran Clay avenue, and at this point it and Webster avenue came together, running practically parallel, thus making a street between the hotel and Claremont Park on the west of considerably more than 100 feet in width.   The city advertised for

proposals, and duly let the work to one Flannagan, who duly entered
into a contract with the city therefor on the 2d day of March, 1906.
The period within which he was required to perform the work was
400 consecutive calendar days.  The contract required that a tunnel,
and not an open trench, be excavated for most of the distance for the
construction of the sewer.  The contractor was required to prosecute
the work of constructing the tunnel in at least four places simulta-
neously, and with sufficient shifts of men at each place to continue the
work day and night.  Flannagan commenced work about the 20th day
of March, 1906, or shortly thereafter.  It appears that ground was
broken for the portal of the tunnel about 170 feet west of the hotel,
and that the excavation was about 75 feet long, evidently east and west,
by 18 feet in width.  On the 19th of April, 1906, the contractor erected
a fence around the portal, cutting off Clay avenue entirely and cutting
off the westerly side of Webster avenue from a line four feet easterly
of the westerly curb thereof, leaving Webster avenue between the
fence and the hotel free for traffic.  A derrick and other appliances
were used in making the excavation, which required considerable blast-
ing.  Flannagan continued the work until the 7th day of April, 1907,
when he died.  After his death his widow proceeded with the work until
August, 1907, when she gave notice to the city authorities that she in-
tended to remove the pumps installed to keep the tunnel free from wa-
ter and to discontinue the work, and she did remove some of the pumps
and dismantled part of the plant and refused to continue the work.  A
formal notice of abandonment was given her by the borough president
on the 29th day of August, 1907.  It was estimated that the entire
excavation would require the removal of 75,000 cubic yards of earth
and rock, and the city authorities estimated that the work remaining
to be done when Flannagan's widow abandoned it was 25,000 cubic
yards.  According to the testimony, an entire month was required by
the city authorities to estimate the work remaining to be done in or-
der to readvertise for proposals therefor, and it shows that the city
authorities proceeded with due diligence and called for proposals for
finishing the work to be in by October 1, 1907.  The contract for com-
pleting the work was let to the Williams Engineering & Contracting
Company on the 6th day of November, 1907.  The second contractor
began work at the High Bridge end and other points on the 4th day of
December, 1907, but did not resume work at the Webster avenue end
until July, 1908, and it appears that Flannagan had ceased work on the
Webster avenue end of the tunnel on the 18th of January, 1907, and
no work was done there for that period, or for about 1½ years.  During
this period, however, Webster avenue remained open to the extent stat-
ed; and it is manifest that access to the hotel was not interfered with,
and no damage is claimed therefor.  After work under the first con-
tract was abandoned it became necessary to have pumps installed and
kept in operation to keep the tunnel free from water, and for that
purpose the city employed an independent contractor at $60 per day.
There was some delay incident to the removal of machinery and sup-
plies left on the work under the first contract.

     According to the testimony of the president of the second contractor,
it was delayed in proceeding with the work by the failure of the city's

engineers to give orders, and on that testimony the jury was warranted in finding that some of the delay thus caused was unnecessary, and that the representatives of the city were responsible therefor. According to testimony offered in behalf of the city, the second contractor failed to install pumps for a period of three or four months after it was ordered so to do; but the president of the second contractor testified, in substance, that he was delayed in installing his pumps by the maintenance of the pumps of the independent contractor and by the failure of the city authorities to allow him to install his pumps. This likewise presented a question of fact upon which the jury was warranted in finding that the city authorities were responsible for this delay. Other delay was caused by the failure of the second contractor to use concrete as required by the engineer in charge. The second contractor claimed that its contract did not require the concrete, and whether it did or not was not conclusively shown. The second contractor also claimed that the work was retarded by its being unreasonably required by the city authorities to leave certain concrete forms in place for a period of three weeks. The city failed to show that this was unnecessary. In behalf of the city, evidence was given tending to show that the second contractor failed to perform the work as required by the contract and directed by the engineers in charge, and unreasonably resisted orders given, and in some instances wholly failed to comply therewith. This evidence is controverted, but the fair preponderance of the evidence is that the second contractor was guilty of unreasonable delay, and that the representatives of the city made every reasonable effort to require the contractor to proceed with more diligence. Finally the second contractor stopped working the pumps, and ordered his employés from the work, and on this being duly certified to the borough president by the engineer in charge of the work, as provided by the contract, the borough president, pursuant to the provisions of the contract, gave the contractor formal notice that, on account of his unreasonable delay and willful failure to execute orders, the city would take over the uncompleted work and finish it at the expense of the contractor. The city's engineers thereupon proceeded to estimate the work remaining to be done with a view to advertising for proposals therefor; but, the tunnel being a mile in length and the work being in various places and stages of completion, this necessarily required considerable time. Proposals for the completion of the work were finally invited, and on the 12th day of January, 1909, the contract therefor was awarded to McDonald & Barry; the contract was executed on the 2d of March, and the work commenced on the 19th of April, 1909, and finished on the 5th day of May, 1910.

It was not satisfactorily shown that the period which elapsed between the notice terminating the second contract and the award of the third contract and the signing thereof and the commencement of the work thereunder was required, and the chief engineer of sewers for the borough of the Bronx testified that he was unable to explain it. The jury, therefore, were warranted in charging the city with unreasonable delay for a considerable part of this period. It appears that on the 3d of September, 1908, the fence around the portal was extended easterly in Webster avenue to within 10 or 12 feet of the

easterly curb, leaving only sufficient space in the carriageway for a single street railway track which ran along the avenue. It further appears that the fence was moved to the easterly curb on June 11, 1909, thus closing the carriageway, and that it so remained until about the 29th of December, 1909, when the westerly side of the avenue was opened for traffic, and all obstructions were removed on the 16th day of February, 1910. Prior to completion by McDonald & Barry, the street was twice paved, which necessarily obstructed it. It appears that the third contractor proceeded with due diligence in completing the work. Their contract required that the work be completed in 150 days. Their work, however, was delayed by the flooding of the tunnel on four different occasions, by a hole being broken into an adjoining sewer by employés of the city, and they recovered damages of the city therefor. They were given an extension of 75 days within which to complete the work, but they only required 60 days of the additional period.

It does not appear that the sidewalk adjacent to the hotel, either on Wendover avenue or Webster avenue, was ever obstructed; but it was shown that for a time Wendover avenue, at its intersection with Webster avenue, was obstructed by materials dumped from the excavation north of the fence around the same and in constructing the sewer across Wendover avenue. It appears that Flannagan made some claim against the city which was settled. It is claimed in the brief for the city that the settlement was for the work done, but neither the nature of the claim nor the basis of the settlement is shown by the record. It also appears that the second contractor made claim against the city for $370,000, and that the city settled it for $100,000, which it was shown was less than the value of the work actually done.

Counsel for the city duly moved for a dismissal of the complaint at the close of the plaintiff's case and at the close of all the evidence, upon the grounds, among others, that no cause of action was shown, and that the damages were consequential and incidental to a lawful improvement and are deemed damnum absque injuria; that the damages were caused by the lawful acts of independent contractors whose duty it was· to prosecute the work with reasonable dispatch, and for whose failure in that regard the city was not liable; that it was not shown that the work was unreasonably delayed by any act or omission for which the city could be held liable; that the decedent was unlawfully engaged in conducting the liquor business in connection with the hotel and restaurant, and that the lawful and unlawful business could not be segregated; that it could not be determined that the lawful business would have suffered were it not for its connection with and dependence upon the unlawful business; that the cause of action, if any, did not accrue to the plaintiff's intestate, and that it was not shown that a certified claim had been duly filed with the comptroller; and the defendant moved separately for a dismissal with respect to the damages claimed to have accrued prior to the 15th day of June, 1909, and prior to the 25th day of July, 1909. The motions were denied, and counsel for defendant duly excepted. The court thereupon submitted to the jury four questions, namely: (1) Whether the city by the acts or omissions of its officers or engineers, or any of them, unreasonably

prolonged the building of the sewer; (2) whether the contractors employed by the city unreasonably prolonged the building of the sewer; (3) whether the city in building the sewer interfered with ingress to and egress from the hotel for an unreasonable length of time, all of which questions were answered in the affirmative; (4) the damage to the usable value of the hotel property for the whole period during which the easement of the intestate was interfered with after the lapse of a reasonable time for building the sewer, which the jury fixed at $7,500, and the usable period after July, 1909, which the jury fixed at $1,625. The jury reported that the $7,500 included the period after as well as before July, 1909. The court then, on motion of counsel for the plaintiff, directed a verdict in favor of the plaintiff for $7,500, and counsel for the city excepted.

[3] The learned counsel for the city contend at the outset that the action was barred by the statute of limitations prescribed by section 261 of the Greater New York Charter (Laws 1901, c. 466), as amended by Laws of 1907, c. 677. That statute provides, among other things, that no action shall be maintained against the city on a claim "accruing after the passage of this act, for damages for injuries to personal property, or for the destruction thereof, alleged to have been sustained by reason of the negligence of, or by the creation or maintenance of a nuisance by, said city, or any department, board, officer, agent or employé thereof," unless the action shall be commenced within one year after the cause of action shall have accrued, nor unless notice of intention to commence it and of the time when and the place where the damages were incurred or sustained, together with a verified statement showing in detail the property alleged to have been damaged or destroyed, and the value thereof, shall have been filed with the comptroller "within six months after such cause of action shall have accrued." If the provisions of that section were applicable to this action, the point, on the uncontroverted facts, would be well taken. I am of opinion that the trial court rightly held that the action is not for damages to personal property, but to the easements of the plaintiff's intestate as lessee of the premises, which were appurtenant to and remained annexed to the realty and entitled him to the use of the street for access to and egress from the premises, and the damages in such case are measured by the diminution in the usable value of the realty. Bates v. Holbrook, 67 App. Div. 26, 73 N. Y. Supp. 417, affirmed 171 N. Y. 460, 64 N. E. 181; Id., second appeal, 89 App. Div. 548, 85 N. Y. Supp. 673, appeal dismissed 178 N. Y. 568, 70 N. E. 1094; Hall Sons Co. v. Sundstrom, 138 App Div. 548, 123 N. Y. Supp. 390. See, also, Bly v. Edison Elec. L. Co., 54 App. Div. 427, 66 N. Y. Supp. 737, reversed 172 N. Y. 1, 64 N. E. 745, 58 L. R. A. 500; Id., 111 App. Div. 170, 97 N. Y. Supp. 592, affirmed 188 N. Y. 582, 81 N. E. 1160; Kernochan v. N. Y. El. R..R. Co., 128 N. Y. 559, 29 N. E. 65; Kane v. N. Y. El. R. R. Co., 125 N. Y. 164, 26 N. E. 278, 11 L. R. A. 640; Lahr v. Met. El. R. Co., 104 N. Y. 268, 10 N. E. 528; Bohm v. Met. El. Rd. Co., 129 N. Y. 576, 29 N. E. 802, 14 L. R. A. 344.

[4-6] It appears by the special verdict, which is sustained by the evidence, that part of the delay for which the recovery has been had

was due to the failure of the contractors to perform their work with due diligence as required by the contract and by the orders duly given by those in charge of the work for the city. The city could not perform this work itself, for the charter required that it submit the work to public competitive bidding, and that it thereafter let the work by contract, and as each successive contractor failed to perform, and the city took over the work, it was obliged to relet the remaining work in the same manner. Greater New York Charter, §§ 397, 419. Such contractors are not the agents of the city, but are independent contractors, for whose acts resulting in injury to persons or to property it is not liable (Storrs v. City of Utica, 17 N. Y. 104, 72 Am. Dec. 437; Uppington v. City of New York, 165 N. Y. 222, 59 N. E. 91, 53 L. R. A. 550; Deming v. Terminal Ry. of Buffalo, 169 N. Y. 1, 61 N. E. 983, 88 Am. St. Rep. 521), but of course the statutory duty of the city to maintain the streets in a reasonably safe condition continues, and for its failure to perform that duty, as by failing properly to guard obstructions and excavations, even though it requires the contractors so to do, it remains liable (Deming v. Terminal Ry., supra; Pettengill v. City of Yonkers, 116 N. Y. 558, 22 N. E. 1095, 15 Am. St. Rep. 442; Brusso v. City of Buffalo, 90 N. Y. 679). No precedent has been cited, and we have found none, holding that the city is liable to an abutting property owner for consequential damages resulting from unreasonable delay on the part of an independent contractor in performing work involving an excavation or obstruction of a public street. To hold the city liable for such delay would, in effect, make the contractor the agent of the city and render it absolutely liable for the performance of work, which it is thus required to have performed by a contractor, within a reasonable time after the commencement thereof, notwithstanding the fact that the work may be unreasonably delayed by the contractor, even though the city and its representatives in charge of the work exercise all due diligence to require prompt performance, and notwithstanding the fact that delays may necessarily be caused by reletting the work in case of an abandonment or for other cause. It would be unreasonable to hold the city for delay which it could not obviate, and therefore, I think, it is not liable for delay caused by a contractor without fault on its part when it was obliged to do the work by contract. The jury did not find separately the delay and damage caused by the contractors, and therefore no part of the recovery can be sustained.

[7] I am of opinion, however, that the complaint should not be dismissed. A municipal corporation is not liable for its failure to make a municipal improvement; nor is it liable for consequential damages to the owners or occupants of property abutting on a street which it opens and obstructs in making a municipal improvement, for which it has legislative authority. Dillon on Municipal Corp. (5th Ed.) § 1674; Uppington v. City of New York, supra. Any unauthorized obstruction of a public street is a public nuisance, and a private nuisance also if special damages are caused thereby to the owners or occupants of abutting property. Dillon on Municipal Corp. (5th Ed.) §§ 69, 1170; Callanan v. Gilman et al., 107 N. Y. 360, 14 N. E. 264, 1 Am. St. Rep. 831; Cohen v. Mayor, etc., City of New York, 113 N. Y. 532, 21 N. E.

700, 4 L. R. A. 406, 10 Am. St. Rep. 506. Ordinarily a municipal corporation is not liable for an error of judgment on the part of its officials or representatives in determining upon a plan for a public improvement (Atwater v. Trustees, etc., 124 N. Y. 602, 27 N. E. 385.; Seifert v. City of Brooklyn, 101 N. Y. 136, 4 N. E. 321, 54 Am. Rep. 664; Rochester White Lead Co. v. City of. Rochester, 3 N. Y. 465, 53 Am. Dec. 316; Urquhart v. City of Ogdensburgh, 97 N. Y. 238; Uppington v. City of New York, supra); nor where the work is required to be performed by contract is it liable, I think, for an error of judgment in determining in advance the period within which the work should be performed (see Atwater v. Trustees, etc., supra, at page 611 of 124 N. Y., 27 N. E. 385, and Seifert v. City of Brooklyn, supra). It is, however, I think, the duty of a municipal corporation in exercising its legislative authority to make improvements requiring the obstruction of streets, to use reasonable care and diligence to the end that the street shall not be *unnecessarily* obstructed, and that *necessary* obstructions shall not be *continued* beyond the time reasonably required for making the improvement; and, although the precise point has not been adjudicated within this jurisdiction, such a rule of liability has been repeatedly recognized in the opinions of our courts, and it has been so adjudicated elsewhere. 28 Cyc. 1079; Lefkovitz v. Chicago, 238 Ill. 23, 87 N. E. 58; Rochester White Lead Co. v. City of Rochester, supra; Bates v. Holbrook, 171 N. Y. 460, 64 N. E. 181; Dillon on Municipal Corp. (5th Ed.) §§ 1168, 1169, 1170; St. John v. Mayor, etc., 16 N. Y. Super. Ct. 483; People v. Cunningham, 1 Denio, 524, 43 Am. Dec. 709 See, also, Atwater v. Trustees, etc., supra; Uppington v. City of New York, supra; Callanan v. Gilman, supra; Frick v. Kansas City, 117 Mo. App. 488, 495, 93 S. W. 351; Williams v. Tripp, 11 R. I. 447; State ex rel. Beatty v. City of Omaha, 14 Neb. 265, 15 N. W. 210, 45 Am. Rep. 108; Wilkes v. Hangerford Market Co., 2 Bing. (N. C.) 281. If the city be not liable for consequential damages from unreasonable delay in the prosecution of a public improvement in any circumstance, then it may completely obstruct a street and abandon work on the improvement indefinitely, and abutting shopkeepers would have no redress. I am of opinion that the extent of the immunity of a municipal corporation from liability for obstructing streets in making public improvements is for the period reasonably necessary for the performance of the work, with immunity also from liability for errors of judgment with respect to the period required for the performance of the work, and from liability for delays caused by contractors without its fault. In the case at bar, it appears that work on the improvement opposite the hotel in question, after the street was obstructed so as to result in consequential damages to the proprietor of the hotel, was suspended at one time for a period of upwards of one year and a half, and that a large part of this delay was caused by the failure of the representatives of the city in charge of the work to exercise due diligence in requiring the contractor to proceed with the work, or in declaring the contract abandoned and in reletting the work. The case, therefore, I think, presented questions of fact for the consideration of the jury with respect to the liability of the city.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to the appellants to abide the event. Settle order on notice.

DOWLING and HOTCHKISS, JJ., concur.

INGRAHAM, P. J. I concur with my Brother LAUGHLIN in the reversal of this judgment, but I think that the defendant was entitled to a dismissal of the complaint or a direction of a verdict in its favor at the close of the whole testimony. The distinction between the liability of a municipal corporation acting under legislative authority in constructing a public work, and thus exercising governmental powers delegated to it by the state, and that where a municipal corporation, as a private owner of property, is engaged in improving its property or constructing a work for the benefit of the corporation, is clearly recognized in all of the decisions of this state dealing with this subject. Radcliff's Executors v. Mayor, etc., of Brooklyn, 4 N. Y. 195, 53 Am. Dec. 357, settled for this state that a municipal corporation, thus exercising governmental powers conferred upon it by the state, is not liable for consequential damages to abutting property, there being no want of care or skill in the execution of the work and no provision in the charter for the payment of damages of that kind. And since that time this principle has been consistently applied. In Atwater v. Trustees, etc., 124 N. Y. 602, 608, 27 N. E. 385, it is said:

"The doctrine, however, is well established in this state that public officers lawfully employed in making public improvements, and corporations engaged in the performance of work of a public nature authorized by law, are not liable for consequential damages occasioned by it to others, unless caused by misconduct, negligence, or unskillfulness."

And in Uppington v. City, 165 N. Y. 222, 231, 59 N. E. 91, 53 L. R. A. 550, it is said:

"Consequential damages, more or less serious, naturally result from making extensive improvements in a public street occupied with dwellings standing upon either side. The city, however, is not liable therefor at common law so long as they are confined to consequences that are the necessary and usual result of the proper exercise of the power to make the improvement. * * * When, however, the city has power to let the work, and it enters into contract with competent contractors, doing an independent business, who agree to furnish the necessary materials and labor and make the entire improvement according to specifications prepared in advance, for a lump sum, or its equivalent, they are not the servants or agents of the city, but are independent contractors, and the city is not liable for their negligence, even when it reserves the right to change, inspect, and supervise to the extent necessary to produce the result intended by the contract, provided the plan is reasonably safe, the work is lawful, is not a nuisance when completed, and there is no interference therewith by municipal officers, which results in injury."

In making the public improvement in question the city was required by the Legislature to do the work by contract let after public bidding, and the city had no power to have this work done in any other way. As thus required by the Legislature, it advertised for bids for doing the work, proposed a contract, which is not complained of, executed the contract as required by the charter, and the contractor proceeded in

the execution of the work. I do not understand that there is any evidence to justify a finding that the contractor unnecessarily obstructed the street, or that the city was negligent, or that any of the responsible officers of the city were responsible for any unnecessary obstruction in the street, and the only evidence that I can see upon which any claim of negligence on behalf of the city or its officers can be based is that the municipal authorities did not exercise sufficient diligence in exercising the power under the contract to terminate it when the original contractor failed to complete it according to its terms and make a new contract for the completion of the work. Now, the original contractor failed to complete, the municipal officers finally terminated the contract, and subsequently made a new contract with new contractors to complete its work. The new contractors subsequently defaulted, and the city again terminated the second contract, and the work was finally completed. Thus the delay was caused, not by any act of the city officials, but by the failure of contractors to complete the work which the city was compelled to have done by contract, and the question whether it would be for the public interest, as well as for the interest of the abutting property, to terminate a contract and to advertise for new bids, it seems to me, is one that necessarily had to be determined by the municipal authorities, and the determination of that question, where there is no element of fraud or bad faith, would not, I think, impose a liability on the defendant. Although there was a failure to complete in time, it is obviously often to the advantage of both the municipality and the abutting owners that the contractors should be allowed to complete the contract, rather than to go to the expense and increased cost of terminating the contract and advertising for new bids. It was certainly not the fault of the city or its responsible officers that these contractors failed in the completion of their contract. And there was no evidence, I think, to justify a finding that the delay in the making of new contracts, or the delay in the completion of the work by the subsequent contractors, was a result of any negligence or omission of duty by the defendant or its officers. The city was constructing sewers in a portion of the city through which streets had been recently opened. I think it is apparent that a large amount of work was being thrown upon the public officials in adopting the new territory so that it would be used as a part of the city, and mere delay in the abrogation of contracts, or the making of new contracts, does not, as I view it, expose the city to damages for the consequential injuries entailed upon abutting property. For these reasons, therefore, I think that the judgment should be reversed and the complaint dismissed.

Of course, a very different question would be presented if the action was against contractors who had unnecessarily obstructed the street, established a nuisance, or unnecessarily injured abutting property, as in Bates v. Holbrook, 171 N. Y. 460, 64 N. E. 181.

McLAUGHLIN, J. concurs.