Ramonita Barrientos et al., Plaintiffs and Appellees, *v.* Government of the Capital et al., Defendants and Appellees; Island Constructors, Inc., et al., Defendants and Appellants; Carmen J. Martínez Cancel et al., Plaintiffs and Appellants, *v.* Government of the Capital et al., Defendants and Appellees; Joaquín Valdivieso Llompart et al., Plaintiffs and Appellants, *v.* Nolla, Galib & Co. et al., Defendants and Appellees; César Maldonado et al., Plaintiffs and Appellants, *v.* Government of the Capital et al., Defendants and Appellees; León Lyon and Auris M. Girona, Plaintiffs and Appellees, *v.* Government of the Capital et al., Defendants and Appellees; Island Constructors, Inc., et al., Defendants and Appellants; Conjugal Partnership constituted by Heriberto Berly and Julia Colón, Plaintiffs and Appellees, *v.* Nolla, Galib & Co. et al., Defendants and Appellees; Island Constructors, Inc., Defendants and Appellants.

Nos. R-62-61, 156,
R-62-67 to 69,
R-64-188, R-64-214.

Decided June 27, 1969.

*Castro & Castro* for defendant Island Constructors, Inc., and its insurer, American Surety Co. of N.Y., appellants. *Picó & Rosa Silva, J. R. Lebrón Velázquez,* and *Benigno Dapena Yordán* for defendant, Government of the Capital. *Jorge Souss* for defendant, Nolla, Galib & Co. *Emilio de Aldrey* for U.S. Casualty Co., insurer of Nolla, Galib & Co. *Martínez-Muñoz, Agrait-Oliveras & Otero, Edelmiro Martínez Rivera, Edelmiro Martínez, Jr.,* for plaintiffs-appellants. *R. Elfren Bernier, Ramos & Latoni, Rodríguez Emma & Rodríguez Ramón, Julio Suárez Garriga, José N. Moreno, José M. Ramos, J. Pedro Miranda, Carmelo Ávila Medina, Juan Rivera Santiago, Luis Sánchez Vilella, George Weasler, Rafael Martínez Álvarez, Jr.,* and *Guillermo Bauzá* for the other plaintiffs.

MR. JUSTICE TORRES RIGUAL delivered the opinion of the Court.

## *The Facts*

Around the beginning of 1957 the Municipality of San Juan contracted with Nolla, Galib & Co., after public bidding held for that purpose, for the construction of a sewerage system and a pump house in the section of Ocean Park in Santurce in the amount of $433,241.48. Nolla and Galib subcontracted with appellant, Island Constructors, Inc., for

the performance of that part of the contract concerning the installation of the storm-water sewer in the sum of $199,322.60, leaving for itself the construction of the pump house. The municipality approved this subcontract.

As it is usual in these kind of transactions, the contractor as well as the subcontractor secured the faithful performance of the contract and the payment of materials and labor. They also obtained liability policies to answer for the damages which may be caused in the execution of the work.

The contract required that the pipes be installed in the dry about eight feet deep. The drawings indicated that the ground-water level in that section was at a distance of about two feet from the surface of the street. They also showed that the subsoil was composed of a peat stratum which fluctuated between six and eight feet and another inferior stratum composed of fine sand up to a depth of about 21 to 23 feet. The consistency of this subsoil was very properly described by the resident engineer of the municipality as *unsafe*.

In order to perform the installation of the pipes in the dry, Island Constructors, Inc., tried to use the system of well points for the purpose of extracting the water from the subsoil. It installed a line of about 120 well points at an approximate depth of ten feet along Cacique Street from its intersection at Santa Ana Street to its intersection at Santa Cecilia Street.

On Saturday, March 30, 1957, Island Constructors, Inc., carried out a test of this system which lasted between two and four hours. Said test reduced the ground-water level in such a manner that it brought about a settlement of the ground in an area of about 1,000 feet. As a result of the settlement, cracks appeared immediately on sidewalks, walls, fences, and the sinking of floors in the neighborhood was produced. Subsequently similar damages began to appear in the properties located within that area.

In view of the occurrence, and following instructions of the inspectors of the municipality, Island Constructors, Inc., stopped the works, resuming them at the request of the surety, American Surety Co., which feared the confiscation of the bond.[1]

Finally, Island Constructors, Inc., abandoned the performance of the work, its surety, American Surety Co., undertaking its continuation on the basis of a stipulation agreed upon with Nolla, Galib & Co. as part of a lawsuit which the latter had brought for the specific performance of the subcontract.[2]

The foregoing facts gave rise to an extensive and complex litigation which culminated in the judgment object of the petitions for review above-mentioned. Said judgment sustained the complaint against appellants, Island Constructors, Inc., and its surety, American Surety Co. of New York; dismissed the complaint as to defendants Nolla, Galib & Co., Government of the Capital, U.S. Casualty Co., Pedro Tejada, and P. J. Tejada Associates. The judgment also dismissed the cross claim brought by the Government of the Capital against Nolla, Galib & Co. and Island Constructors, Inc., as well as the complaint against third party filed by Island Constructors, Inc., against Gabriel Fuentes.[3]

[1] We need not relate the incidents concerning the suspension and resuming of the work, as well as the adoption of a new method for the installation of the pipes and the change of the system of well points to that of extracting water by pumping from an open cut, since they do not alter in any manner whatsoever the adjudication of liability in the case.

[2] Civil Case Nos. 57 and 6515 filed in the Superior Court, San Juan Part, by Nolla, Galib & Co. against Island Constructors, Inc., and American Surety Co.

[3] Said judgment disposed of 32 consolidated cases. The six petitions for review above-mentioned were filed against it. Petitions Nos. 62-61, 62-156, 64-214, and 64-188 filed by Island Constructors, Inc., and American Surety Co. comprise identical assignments of errors. Petitions Nos. 62-61 and 62-156 were consolidated at appellants' request. Petitions Nos. 62-67 and 62-69 filed by Carmen Martínez Cancel et al., and César Martínez Maldonado et al., respectively, comprise similar assignments of errors.

For the purposes of facilitating the discussion of the different and complex questions raised in said petitions for review, we shall group the assignment of errors related among themselves, and thus grouped, we shall discuss them.

—I—

*Assignment of Errors Concerning the Determination of Negligence and Cause of Damages[4]*

The fundamental finding of the trial court concerning this question was in synthesis that the damages were due exclusively to the deficient operation of the system of well points by Island Constructors, Inc., inasmuch as the latter being aware of the nature of the subsoil did not take the necessary measures to prevent the damages; to wit, installation of the well points within sheetpiling duly sealed and the control of the pumping to prevent the displacement of great amounts of water from the subsoil.

Appellants, Island Constructors, Inc., and American Surety Co. challenge said finding on the ground that the same does not represent the most rational, just, and juridical balance of the evidence received. They argue that "the settlement was the natural consequence of having lowered the ground-water level in order to install the pipes in the dry, as required by the specifications of the contract; that such settlement would have occurred irrespective of the method used for the extraction of water or the adequate manner of performing this work according to the specifications; and that the use of sealed sheetpiling for the purpose prescribed in the specification—to prevent the collapse of the sides of the excavations—would not have prevented the descent of the ground-water level nor of the settlement of adjacent lands."

[4] These are assignments a and b of petitions Nos. 62-61 and 62-156, and assignments b and c of petitions Nos. 64-214 and 64-188.

From the foregoing they conclude that the damages were the direct and necessary result of the works performed for the construction of the storm-water sewer and that, therefore, the Government of the Capital is the liable entity.

■ The evidence introduced with respect to the cause of the damages consisted mainly of expert testimony,[5] the same being extremely technical and conflicting. The trial court settled the conflict and gave entire credit to the expert of codefendant Nolla, Galib & Co. The careful and repeated reading we have made of the voluminous record—10 pieces of evidence with over 3,000 pages—convinces us that the trial court acted within its discretion in settling the conflict in the manner it did and that we should not disturb these findings on appeal because the same are amply supported by the evidence presented.

## —II—

*Assignments Concerning the Discharge of the Government of the Capital From Liability[6]*

The trial court concluded the following on this question:

a) that the work required for the construction of the sewerage was not inherently dangerous because it was a question of engineering works ordinarily performed;

b) that said works did not require extraordinary precautions in order to prevent injury, since through the adequate use of any acceptable method to extract water from the ground, damages to neighboring buildings could not be foreseen; and,

c) that because of its inherent nature the work did not have to cause or produce risks of injury.

With respect to the foregoing findings, and as a matter of law, the trial court concluded that the relations between Nolla, Galib & Co. and Island Constructors, Inc., were those

---

[5] The court heard the testimony of five experts.

[6] It covers the assignments of petitions Nos. 62-67 and 62-69.

of an independent contractor and subcontractor and that, therefore, Nolla, Galib & Co. was not liable for the damages caused by Island Constructors, Inc., particularly when a work inherently dangerous was not involved. The court used this same reasoning to relieve the Government of the Capital from liability.

Appellants maintain that as a result of the conditions and nature of the subsoil, the works were inherently dangerous, for which reason the Government of the Capital was barred from delegating its duty by a relationship of principal and independent contractor. We agree with this position and shall immediately set forth the reasons which justify the modification of the judgment rendered by the trial court.

In general terms, an owner is not held liable for the negligent acts of an independent contractor. *Mariani* v. *Christy*, 73 P.R.R. 729 (1952). The case law, however, has established so many and different exceptions to this general principle of nonliability that some commentators as Prosser doubt its validity. Prosser, Law of Torts 483–486 (Hornbook Series, 1964).[7]

■ The doctrine of the inherent danger invoked by appellants in order to impose liability upon the Government of the Capital and Nolla, Galib & Co. is one of the numerous exceptions to the general rule of nonliability. By virtue thereof, the owner is liable for the negligence of an independent contractor in the construction of a work which is inherently or intrinsically dangerous. Prosser, *supra* at 483; Shelton, *Employer's Liability for Negligence of His Independent Con-*

---

[7] In the introductory notes to § 409 of Restatement of the Law, Torts 2d at p. 370, it is said that the exceptions to this general rule are so numerous that "it can now be said to be 'general' only in the sense that it is applied where no good reason is found for departing from it." In *Pacific Fire Ins. Co.* v. *Kenny Boiler & Mfg. Co.*, 201 Minn. 500, 277 N.W. 226 (1937), cited in said introductory note, it was also stated:

"Indeed it would be proper to say that the rule is now primarily important as a preamble to the catalog of its exceptions."

*tractor*, 30 Tenn. L. Rev. 439; Anno: *Non-Delegable Duty of Employer With Respect to Work Which is Inherently or Intrinsically Dangerous*, 23 A.L.R. 1084. This exception is closely connected with another which also imposes liability upon the principal for the negligence of the contractor not only when the work is inherently or intrinsically dangerous, but also, when a work which in the natural course of events entails some risk, unless special precautions are taken, is involved. This exception originated in England in the case of *Bower* v. *Peate*, L.R. 1 Q.B. Div. Eng. (1876), it being stated in the following words:

"A man who orders a work to be executed, from which, in the natural course of things, injurious consequences to his neighbor must be expected to arise, unless means are adopted by which such consequences may be prevented, is bound to see to the doing of that which is necessary to prevent the mischief, and cannot relieve himself of his responsibility by employing someone else—whether it be the contractor employed to do the work from which the danger arises, or some independent person —to do what is necessary to prevent the act he has ordered to, be done from becoming wrongful."

In the United States this exception has been applied with a similar language, although not as clear and precise, in *Chicago* v. *Robbins*, 2 Black (U.S.) 418.

Both exceptions, that of the inherent danger and that of *Bower* v. *Peate, supra*, are so closely connected that they may be considered not as separate and independent doctrines, but as part of the same rule of primary, nondelegable liability, of the owner for the negligent acts of an independent contractor. See Anno: *Non-Delegable Duty of Employer in Respect of Work Which Will in the Natural Course of Events Produce Injury, Unless Certain Precautions Are Taken*, 23 A.L.R. 1016; Anno: *Independent Contractor Rule as Applicable To Injury or Death of Third Person as Result of Excavation and Refill Work*, 33 A.L.R.2d 7. Prosser considers them both as a sole exception to the general rule and he discusses it so in his

treatise on torts. Prosser, *supra* at 485. Logically, the one is necessarily included in the other since any work which is inherently or intrinsically dangerous, on account of its own definition, falls within the more embracing concept of *Bower* v. *Peate, supra,* which refers to works which ordinarily may cause injury unless special precautions are taken. In practice, both exceptions have been indistinctly used by the state courts in order to reach the same result. Restatement of the Law, Torts, *supra* at 395. The Restatement adopts both doctrines in §§ 416 and 427 stating that both have been applied interchangeably in different cases and even in the same case.[8] The foregoing convinces us that we must adopt in our jurisdiction the accurate and comprehensive formula of *Bower* v. *Peate* which imposes liability upon the owner for the negligent acts of the contractor in the performance of a work which in the natural course of events may cause injury unless precautions are taken. ·

Under the most comprehensive doctrine which we defend herein it is not required that the injury be a *necessary* and *direct* result of the stipulated work as we held in *Mariani* v. *Christy, supra,* and repeated in *Bonet* v. *Municipality of Barceloneta,* 87 P.R.R. 74 (1963). In said cases we applied the restrictive concept of the doctrine of inherent risk stating

---

[8] Sections 416 and 427 read as follows: .

"§ 416. Work Dangerous in Absence of Special Precautions

"One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

"§ 427. Negligence as to Danger Inherent in the Work

"One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger."

that the damages must constitute "the direct and necessary result of the stipulated work, that is, if the work to be done cannot be done without danger or injury to third parties and if its very nature and existence are such as to cause or produce danger or injuries." The rule of liability of the principal being conceived in such a narrow manner, its application has no substantial virtuality and is altogether superfluous. It is elemental in our law that a person who orders another, whether as independent contractor or as a mere employee, to execute an act which necessarily is going to cause injury, is liable for his own culpable act of ordering. They are clear cases of fault which fall under the provisions of § 1802 of the Civil Code, it being unnecessary to draft special doctrines of liability as we did in *Mariani* v. *Christy, supra.*[9] On the other hand, the works which necessarily cause harm because of their inherent nature are certainly very exceptional. Even those usually acknowledged as dangerous, electricity and dynamite, can be utilized without any risk by competent persons qualified to handle them. All of which shows the need of considering always the circumstances which surround the performance of the work and not only the work per se.

The restrictive concept that the harm is the necessary consequence of the performance of the work having been eliminated, it suffices, then, in order to hold the owner liable, that there be a recognizable risk, a harm which can be foreseen. It is not necessary that the risk of causing harm be serious or inevitable. It is sufficient that from the specific circumstances which surround the performance of the work, the existence of a risk which requires that precautions be taken may reasonably be recognized. The precautions need not be of an extraordinary nature either. In *Bonet* v. *Municipality of Barceloneta, supra,* we stressed these essential

---

[9] *Mariani* v. *Christy, supra,* dealt with the performance of a work, by an independent contractor. which implied a trespass upon another's property.

elements of the owner's liability. Nevertheless, we decided the case on the basis of the restrictive concept of the harm which we disregard here. As a matter of fact we are not saying anything new. The element of foreseeability of risk mentioned herein is the same element of foreseeability which is consubstantial to all the doctrine of civil liability provided in § 1802 of the Civil Code.[10]

It is proper now to apply the principles previously enumerated to the instant case. The trial court elaborated its determination, as we already know, on the following grounds:

a) That the work required for the construction of the sewerage was not inherently dangerous because it was a question of engineering works ordinarily performed;

b) That said works did not require extraordinary precautions to prevent injury; and

c) That because of its inherent nature the works did not have to cause or produce risks of injury.

It is immediately noted that the criteria utilized by the trial court are the restrictive views of the need of the injury which we reject herein.

It is beyond discussion that the construction of a storm-water sewer is a common and ordinary engineering work which usually should not anticipate damages. The same thing can be said of other engineering works as the construction of a street, or of a dwelling building, or of a park. The anticipation of the risk and of special precautions do not depend, as we have said, on the nature of the work, but on the *circumstances* which surround its performance. In the case at bar the circumstances established by the evidence and on which there is no discussion were the following:

a) The contract for the installation of the piping for the storm-water sewerage required that the pipes be installed in the dry about eight feet deep.

---

[10] Except, of course, those exceptional cases where objective liability may be applied.

b) The drawings indicated with crystal clearness—"as if they had a photograph of the subsoil"—[11] that the ground-water level in the section where the piping was to be installed was at a distance of about two feet from the surface of the street.

c) The drawings also showed that the subsoil was composed of a peat stratum which fluctuated between six and eight feet and another inferior stratum composed of fine sand up to a depth of about twenty-one to twenty-three feet.

Moreover, the following is inferred from the evidence presented:

a) The Government of the Capital had knowledge of the nature of the subsoil not only because of the drawing but because formerly some sinkings had occurred in some streets of Ocean Park which required the reinforcement of the sidewalks.[12]

b) Engineer Efraín Muratti in describing the subsoil said that "I am surprised to know that in that area there are six or seven feet of peat and that no disaster has occurred."[13]

c) The system of well points for the extraction of water requires special precautions which were not taken in this case, as we saw upon discussing the first part of this opinion.

■ In view of the foregoing, we are constrained to conclude that the construction of the storm-water sewer in the section of Ocean Park constituted a work in the course of which any person would have reasonably foreseen the risks of causing damages unless precautions were taken. The fundamental elements of liability—peculiar risk and special precautions—clearly appeared from all the foregoing circumstances. Therefore, the Government of the Capital was not free from liability in contracting for the performance of the work with an independent contractor. Its liability is of a primary character, nondelegable before the plaintiffs. It is liable not because of its negligence but because of the nature

---

[11] Engineer Capacete's testimony. Tr. Ev., Vol. 5, p. 19.

[12] Engineer Tejada's testimony. Tr. Ev., Vol. 2, pp. 204 and 205.

[13] Engineer Efraín Muratti's testimony. Tr. Ev., Vol. 3, p. 307.

of the work. On the other hand, since the damages were caused by the negligence of the independent contractor, Island Constructors, Inc., upon operating deficiently the system of well points, the latter is liable for its own negligence to plaintiffs. It is also held liable to the Government of the Capital for everything that the latter shall be bound to pay, by virtue of the subcontract with Nolla, Galib & Co. by which it assumed all the obligations of the latter toward the former.[14]

Consistent with the foregoing, we conclude that the trial court erred in dismissing the complaint against the Government of the Capital.

—III—

*Assignment of Errors Concerning the Scope of American Surety Co.'s Liability Under the Public Liability Policies and Under the Performance Bonds*[15]

1. The public liability policy executed by American Surety Co. covers only damages caused as a result of accidents. On the ground of this limitation, appellant, American Surety Co., elaborates the argument that the damages were not the result of an accident, inasmuch as "it was not only foreseeable but that it was advertently anticipated that no substantial damages would be caused to the other proper-

---

[14] Section 4 of the subcontract between Nolla, Galib & Co. and Island Constructors, Inc., reads as follows:

"Section 4. The Subcontractor declares that he has thoroughly examined the drawings and specifications governing the work embraced in the above mentioned contract between the Owner and the Contractor, of which the work covered by this agreement is a part, *and he hereby agrees to assume toward the Contractor all the obligations and responsibilities which the Contractor has assumed toward the Owner under said Contract between the Owner and the Contractor so far as they apply to the part of the work covered by this agreement.* (Italics ours.)

[15] This part covers assignments IV, V, VI, VII, and VIII of petitions 64-214 and 64-188 and assignments (g), (h), (i), (j), (k), (*l*), and (m) of petitions 62-61 and 62-156 consolidated with the latter.

554

ties belonging to plaintiffs such as in effect happened as the work was subsequently continued." We do not agree.

■ In its common and ordinary meaning, which is the only one which we must take into consideration the term "accident" means an unforeseen, sudden or unexpected happening from the point of view of the one sustaining the damage and not of the tort-feasor. *Knight* v. *L. H. Bossier*, 118 So.2d 700; *United States Fidelity and Guaranty Co.* v. *Briscoe*, 239 P.2d 754; *Moore* v. *Fidelity and Casualty Co.*, 295 P.2d 154. See also, 7A Appleman, Insurance Law and Practice, § 4492. Therefore, the fact that appellant, Island Constructors, Inc., foresaw or could foresee that the performance of the work could cause harm is not relevant. For the prejudiced parties, the sinking of their houses was a true accident, an unforeseen, sudden, and unexpected happening.

2. Insofar as the scope of American Surety Co.'s liability under the bond is concerned, the trial court decided: a) that "the obligation of restoring the neighboring properties to the state they had prior to the execution of the works, . . . is of a contractual nature and was assumed by Island Constructors, Inc., by virtue of the terms of the subcontract. Its surety is liable for the performance of this contractual obligation under the terms of the performance bond, irrespective of whether or not negligence in the execution of the works is established, . . .";[16] b) that even though the bond was not constituted for plaintiffs' benefit, they could claim as third-party beneficiaries; c) that American Surety Co.'s liability was not limited to the total amount of its bond; and, d) that American Surety Co. assumed obligations which were more ample and inclusive than that provided for in the bond upon deciding to complete the performance of the subcontract for which purpose it substituted the one under the bond, Island Constructors, Inc.

---

[16] Conclusion of Law No. 12 of the trial court.

We need not consider whether plaintiffs-appellees have the capacity to require the performance of the contractual obligations of Island Constructors, Inc., in connection with the restoration of the damaged properties to their original state. Also, we do not have to consider whether or not plaintiffs-appellees are entitled to claim under the bond executed by American Surety Co. for the execution of the work, since in view of our former conclusion fixing primary liability upon the Government of the Capital, the latter shall be directly liable to plaintiffs and, as we have already seen, Island Constructors, Inc., shall be held directly liable to the Government of the Capital for all damages the latter may pay to plaintiffs. In default thereof, its surety, American Surety Co., shall be held liable.

On the other hand, the construction contract of the Government of the Capital with Nolla, Galib & Co. contains an exemption clause which imposes upon the contractor the obligation of compensating the Government of the Capital for the damages the latter may have to pay on account of the execution of the work.[17] By virtue of said clause, Nolla, Galib & Co. would be liable also to the Government of the

---

[17] Said clause reads:

"General Conditions—7.11 RESPONSIBILITY FOR DAMAGE CLAIMS—

"*The contractor shall save harmless the Capital of Puerto Rico and all its officials, representatives and agents from all suits, actions, or claims of any character brought on account of any injuries or damages received or sustained by any person, persons, or property through the acts of the* contractor, his agents or servants, or by or in consequence of any neglect on the part of the contractor, or his agents or servants, in safeguarding the work, or through the use of inacceptable materials in the construction of the work, or by or on account of any claims or amounts recovered for any infringement of patent, trademark or copyright, and for any claims or amount arising from or recoverable under the Workmen's Compensation laws or any other laws, ordinances, by-laws, orders or decrees. The *contractor shall be responsible for all damage or injury to property of any character during the prosecution of the work resulting from any act, omission, neglect or misconduct in the manner or method of executing said work or due to the nonexecution of said work at any time,* or due to defective work or materials, and such responsibility shall continue until the work has been completed and accepted by the Director." (Italics ours.)

Capital in which case Island Constructors, Inc., would also be bound to pay Nolla, Galib & Co. any amount which the latter would pay to the Government of the Capital, because it was thus bound by section 4 of the subcontract with the former.[18] It is not necessary, however, to consider the liability of Nolla, Galib & Co. toward the Government of the Capital because the latter did not file any appeal against the provision of the judgment exempting the former.

3. Ordinarily the liability of an insurer is limited to the payment of the penalty which appears from the face of the bond. It was thus acknowledged by the trial court but it concluded that in deciding to complete the subcontract American Surety Co. assumed a more ample and embracing obligation. The contention of the surety, American Surety Co., is that any obligation which by virtue of the bond it may assume is limited to the amount fixed in the bond itself. We do not agree.

When a surety undertakes the performance of a construction contract, as in this case, it assumes the obligations and liabilities of the original contractor. Couch, On Insurance 2d, § 47.136; *Southern Surety Co.* v. *Sealy Independent School District,* 10 S.W.2d 786 (Texas 1928); *McClintic-Marshall Corp.* v. *Maryland Cas. Co.,* 100 S.W.2d 438 (Texas 1937); *Galesburg Sanitary Dist.* v. *American Surety Co.,* 32 N.E.2d 407 (Ill. 1941); *Mazzera* v. *Ramsey,* 238 Pac. 101 (Cal. 1925). It is in the same position as the original contractor with respect to the performance of the obligations which arise from the contract without limitation as to the total amount of the bond. *Caron* v. *Andrew,* 284 P.2d 544 (Cal. 1955); *Klein* v. *J. D. & J. M. Collins,* 106 So. 120 (La. 1925) where it was said at p. 122:

"Considering, first, the contentions of the surety company it may be said that, had that company, for instance, left it to the owner to complete the work upon the default of the contrac-

---

[18] See footnote 14 where we reproduce said section 4.

tors, unquestionably the company could not be held liable for more than the amount for which it had bound itself as surety, except for such additional amounts, imposed by law, such as costs of court and statutory penalties. . . . However, if the company, upon the default of the contractors, undertook to complete the work, a different case is then presented. In that event, the company, . . . put itself in the place of the contractors from the moment of the new undertaking,* and became liable for the costs of completing the building, without reference to the amount for which it had signed as surety. In other words, in that event, from that moment on, the company occupied the position of contractor and became liable for the costs of completion accordingly, and also for damages, as fixed in the contract, . . . for the delay in completing and delivering the building."

In synthesis, the trial court did not err in concluding that the surety assumed an obligation more ample and embracing.

*Application of the Doctrine of Comparative Negligence*[19]

■ The trial court concluded that the "settlement of the grounds would not have caused damages to the neighboring structures if the latter would have been constructed in accordance with the methods accepted in engineering for subsoils of the type existing in Ocean Park." Appellants maintain that in view of this conclusion the trial court should have applied the doctrine of concurrent negligence and reduced proportionally the compensation. Although we would admit as valid this conclusion,[20] the same has a fatal defect: Appellants did

---

*EDITOR'S NOTE: The phrase "of the new undertaking" which appears in the original citation was translated into Spanish *"que tomó a su cargo la obra,"* which literally translated into English reads "it took charge of the work."

[19] This part refers to assignment of error No. 9 of petitions 62-61, 62-156, and 64-214.

[20] Against this position assumed by appellants there is the principle of law that the one who acts negligently assumes the responsibility of repairing the damages within the state of things as the latter stood prior to the tortious act. See: Prosser, Law of Torts 2d 260.

not introduce any evidence to show that part of the damages were caused by the conditions of the structures and that part was caused by their own negligence. In the absence of such evidence in the record, appellant must assume liability for all the damages sustained. *Concepción Guzmán* v. *Water Resources Auth.*, 92 P.R.R. 473 (1965).

### Attack to Our Jurisdiction

Appellee, the Government of the Capital challenges our jurisdiction on the ground that the petition for review was untimely filed. It argues that the partial judgment rendered by the trial court on July 29, 1960 was a final judgment since "it decides the merits of the controversy, or the rights of the parties, without leaving anything for a future determination"; that said judgment dismissed the complaint as to the Municipality and likewise it dismissed the crossclaims made by Island Constructors, Inc. We do not agree.

Rule 44.2 of the Rules of Civil Procedure provides that when more than one claim is presented in an action "the court may direct the entry of a final judgment upon one or more but not upon all of the claims *only upon an express determination that there is no just reason for delay in pronouncing judgment on such claims until final adjudication of the case and upon an express direction for entry of judgment.* In the absence of such determination and direction, any . . . decision, . . . which adjudicates less than all the claims, *shall not terminate the action* as to any of the claims, and the . . . decision is subject to revision at any time before the entry of judgment adjudicating all the claims." (Italics ours.)

■ The partial judgment rendered on July 29, 1960 did not expressly conclude, pursuant to the provisions of Rule 44.2, that there was no reason to postpone rendering judgment on the claims against the Municipality. The requirements of Rule 44.2 should be strictly complied with since

they seek to avoid confusion as to when the term to appeal or for review begins to count. Therefore, the judgment was not final until damages were adjudged on February 12, 1962.

### *Error No. 10*

The trial court granted Joaquín Valdivieso a compensation of $13,300 for the damages to his property plus $3,900 for rentals he was bound to pay in Gallardo Apartments from August 8, 1959 to February 12, 1962, date on which the judgment appealed from was rendered, for having been forced to move from his house as a result of the damages sustained by the latter. Appellants complain that the court granted this compensation without any evidence whatsoever of the time reasonably needed to repair said plaintiff's residence.

From the evidence presented it appears that: a) Valdivieso was forced to move from his house as a result of the conditions of the latter; b) that he paid $83 monthly as amortization of a loan with F.H.A. and $130 monthly as rent in Gallardo Apartments; c) that he was an employee of Prison Industries of the Department of Justice; and, d) that the damages to his residence were gradually manifested, for which reason we infer that it was not advisable to start repairing the house until we were sure that no more settlements would occur. Taking these circumstances as a whole, we consider that the trial court did not err in awarding the amount of $3,900 for rentals.

On appeal No. 62-68, Joaquín Valdivieso Llompart in his turn appealed from the judgment rendered by the trial court charging as error that he was not granted compensation for the suffering and mental anguish "sustained on account of the continuous noises produced by the equipment of one or of all the defendants; for the bad odor caused by the backwater; all of which is and has been prejudicial

and offensive to plaintiffs' health and senses. . . ."[21] He relies on *Pereira* v. *I.B.E.C.*, 95 P.R.R. 28 (1967). The doctrine established in the cited case is not applicable because mental anguish for nonperformance of contract was involved therein, while herein appellant's claim was based on the disturbance of his property.[22] But irrespective of the inapplicability of *Pereira* v. *I.B.E.C.*, *supra*, the assignment is untenable because the instant case involves the construction of a public work for the benefit of all the community and, as well put by the trial court, "Those are annoyances which every citizen must suffer. . . ."[23]

## Error No. 11

The court granted plaintiff Jerónimo Ruiz the amount of $5,034.10 for profits not received in his cafeteria and soda fountain from the date stipulated in the contract for the completion of the work, September 19, 1957, to the date when traffic was resumed along the section where his business was located, May 21, 1959. Appellant challenges this compensation on the ground that the inconveniences, annoyances,

---

[21] The averment as it appears from the complaint is the following:

"9.—In view of all the annoyances aforementioned, of the ruinous condition of their residences, depreciation, repair expenses, physical suffering and mental anguish sustained on account of the continuous noises produced by the equipment of one or of all the defendants, for the bad odor caused by the backwater, all of which is and has been prejudicial and offensive to plaintiffs' health and senses; for the interruption of the free and comfortable use of their property, impairing their personal well-being; the fear that the houses may collapse upon them, expenses incurred and to be incurred, the plaintiffs have sustained damages which they assess at the amount of NINETY-THOUSAND DOLLARS ($90,000)."

[22] The theory adduced by appellant before the trial court was set forth in the following manner:

"Mr. Martínez, Jr.:

. . . . . . . .

"No damages for moral suffering or damages to a property are claimed herein. Damages are claimed here on the basis of § 277 of the Code of Civil Procedure." Tr. Ev. Vol. 2, p. 173.

[23] Tr. Ev. Vol. 3, p. 176.

and hindrances which are necessarily caused in the course of a public improvement are not compensable.

■ This is, without any doubt, the general principle. But as every general rule, it has its limitations imposed by reason and by justice. The street should not be obstructed unnecessarily. Even when necessary, the obstruction should not be maintained for an unreasonable length of time. *Lefkovitz* v. *City of Chicago*, 87 N.E. 58 (Ill. 1908); *Cassel* v. *City of New York*, 153 N.Y. Supp. 410 (1915). See also, cases cited in: Anno: *Liability of Public Contractor to Property Owner for Obstructing Street*, 68 A.L.R. 1510.

In the case at bar the term agreed upon for the completion of the work was about five months. However, traffic was interrupted for about twenty months. In the light of the facts which we have previously set forth, we conclude that this interruption was unreasonable. The error assigned was not committed.

## Error No. 12

Appellee, León Lyon[24] filed his complaint against Island Constructors, Inc., on August 8, 1958. He never had the summons issued, but in February 1959 he amended the complaint in order to join as defendant American Surety Co. as surety of Island Constructors, Inc., and under the terms of the insurance policy.

Appellant assigns as error that the trial court did not declare that the complaint in this case had prescribed. It alleges that in accordance with *Heirs of Gorbea* v. *Portilla*, 46 P.R.R. 279 (1934) and *De Jesús* v. *De Jesús*, 37 P.R.R. 143 (1927), the interruption of the limitation period by the institution of a suit has the effect that such period must be counted anew when the interruption ceases. Hence it concludes that the cause of action against Island Constructors,

---

[24] Petition for Review No. 64-188.

Inc., has prescribed. It also argues that when American Surety Co. was included as defendant in February 1959 more than a year had elapsed since the occurrence of the damages. We do not agree.

■ With respect to the interruption of the limitation period by the filing of the complaint against Island Constructors, Inc., appellant's contention was already decided against its claims in *Feliciano* v. *A.S.A.*, 93 P.R.R. 638 (1966).

■ With respect to the defense of prescription of American Surety Co., it suffices to refer to § 20.030 (2)[25] of the Insurance Code, 26 L.P.R.A. § 2003, which recognizes plaintiff's right to bring suit against the insurer even after securing final judgment against the insured. This means that in the case at bar the cause of action against American Surety Co. is still on time, although more than ten years have elapsed since the complaint was amended to join it as defendant. See: *Trigo* v. *The Travelers Ins. Co.*, 91 P.R.R. 843 (1965), which contains a magnificent discussion on the origin and scope of the aforesaid § 20.030.

### Error No. 13

This assignment refers to Petition for Review No. 64-214. It is alleged that the trial court erred in not declaring that the complaint of Heriberto Berly had prescribed; said complaint had been filed on November 2, 1958.

■ From the hearing held on October 27, 1961 to argue the motion for dismissal on the ground of prescription, it is inferred that the damages, were "produced or noted . . . from

---

[25] Section 20.030 (2) reads as follows:

"If the plaintiff in such an action brings suit against the insured alone, such shall not be deemed to deprive him of the right, by subrogation to the rights of the insured under the policy, to maintain action against and recover from the insurer after securing final judgment against the insured."

the month of April or March 1957 to about a month ago";[26] that plaintiff Berly sent a letter to Nolla, Galib & Co. on February 28, 1958 claiming damages; that said letter was sent to Island Constructors, Inc. Therefore, Berly's claim has not prescribed.

Judgment will be rendered consistent with the terms and conclusions of this opinion.

Mr. Justice Pérez Pimentel and Mr. Justice Blanco Lugo did not participate herein.

Mr. Justice Hernández Matos and Mr. Justice Santana Becerra are of the opinion that Nolla, Galib & Co. should also be held directly liable to appellants.

---

[26] Answer given on March 6, 1959 by plaintiff Berly to interrogatories submitted to him by American Surety Co. Said answer was admitted in evidence.